IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


JIM HOOD, ATTORNEY GENERAL OF
THE STATE OF MISSISSIPPI, *ex rel.*
THE STATE OF MISSISSIPPI                                    PLAINTIFF


VS.                              CIVIL ACTION NO. 3:12-cv-565-WHB-LRA


JPMORGAN CHASE & CO., and
CHASE BANK USA, N.A.                                        DEFENDANTS


CONSOLIDATED WITH


JIM HOOD, ATTORNEY GENERAL OF
THE STATE OF MISSISSIPPI, *ex rel.*
THE STATE OF MISSISSIPPI                                    PLAINTIFF


VS.                              CIVIL ACTION NO. 3:12-cv-571


HSBC BANK NEVADA, N.A.
HSBC CARD SERVICES, INC.; and
HSBC BANK USA, N.A.                                         DEFENDANTS


CONSOLIDATED WITH


JIM HOOD, ATTORNEY GENERAL OF
THE STATE OF MISSISSIPPI, *ex rel.*
THE STATE OF MISSISSIPPI                                    PLAINTIFF


VS.                              CIVIL ACTION NO. 3:12-cv-572


CITIGROUP INC.; CITIBANK, N.A.; and
DEPARTMENT STORES NATIONAL BANK                            DEFENDANT



CONSOLIDATED WITH


JIM HOOD, ATTORNEY GENERAL OF
THE STATE OF MISSISSIPPI, *ex rel.*
THE STATE OF MISSISSIPPI                                    PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:12-cv-573


DISCOVER FINANCIAL SERVICES, INC.;
DISCOVER BANK; DFS SERVICES, L.L.C.; and
AMERICAN BANKERS MANAGEMENT COMPANY, INC.                DEFENDANTS


## CONSOLIDATED WITH

JIM HOOD, ATTORNEY GENERAL OF
THE STATE OF MISSISSIPPI, *ex rel.*
THE STATE OF MISSISSIPPI                                    PLAINTIFF


VS.                                              CIVIL ACTION NO. 3:12-cv-574


BANK OF AMERICA CORPORATION
and FIA CARD SERVICES, N.A.                                DEFENDANTS


## CONSOLIDATED WITH

JIM HOOD, ATTORNEY GENERAL OF
THE STATE OF MISSISSIPPI, *ex rel.*
THE STATE OF MISSISSIPPI                                    PLAINTIFF


VS.                                              CIVIL ACITON NO. 3:12-cv-575


CAPITAL ONE BANK (USA) N.A., and
CAPITAL ONE SERVICES, LLC                                  DEFENDANTS

## OPINION AND ORDER

This cause is before the Court on the Motions of Plaintiff to
Remand.  Having considered the pleadings, the attachments thereto,
as well as supporting and opposing authorities, the Court finds the
Motions are not well taken and should be denied.

2

### I.   Factual Background and Procedural History

In June of 2012, the State of Mississippi, by and through its Attorney General, Jim Hood ("Hood"), brought the following lawsuits in the Chancery Court for the First Judicial District of Hinds County, Mississippi "to protect citizen consumers of Mississippi":

> Jim Hood, Attorney General of the State of Mississippi, *ex rel.* the State of Mississippi v. JPMorgan Chase & Co. and Chase Bank USA, N.A. ("Chase Action")
>
> Jim Hood, Attorney General of the State of Mississippi, *ex rel.* the State of Mississippi v. HSBC Bank Nevada, N.A.; HSBC Card Services, Inc.; and HSBC Bank USA, N.A. ("HSBC Action")
>
> Jim Hood, Attorney General of the State of Mississippi, *ex rel.* the State of Mississippi v. Citigroup Inc.; Citibank, N.A.; and Department Stores National Bank ("Citigroup Action")
>
> Jim Hood, Attorney General of the State of Mississippi, *ex rel.* the State of Mississippi v. Discover Financial Services, Inc.; Discover Bank; DFS Services, L.L.C.; and American Bankers Management Company, Inc. ("Discover Action")
>
> Jim Hood, Attorney General of the State of Mississippi, *ex rel.* the State of Mississippi v. Bank of America Corporation and FIA Card Services, N.A. ("BOA Action")
>
> Jim Hood, Attorney General of the State of Mississippi, *ex rel.* the State of Mississippi v. Capital One Bank (USA) N.A. and Capital One Services, LLC ("Capital One Action")[1]

Amended Complaints were filed in each lawsuit in August of 2012. The subject lawsuits are predicated on the following allegations:

---

[1]  The lawsuits are docketed in this Court as follows:

| | |
|---|---|
| Chase Action | Civil Action No. 3:12-cv-565 |
| HSBC Action | Civil Action No. 3:12-cv-571 |
| Citigroup Action | Civil Action No. 3:12-cv-572 |
| Discover Action | Civil Action No. 3:12-cv-573 |
| BOA Action | Civil Action No. 3:12-cv-574 |
| Capital One Action | Civil Action No. 3:12-cv-575 |

These actions stem from the Defendants' marketing, selling, and administering to Mississippi consumers fee-based products, which are ancillary to their credit cards.

Defendants market such ancillary products as protection for consumers against improper or unauthorized charges on their credit cards, identity theft, and lost or stolen credit cards and/or as providing benefits in the event of unemployment or disability. Each ancillary product is marketed only to the Defendants' current card holders, and the products themselves are attached to the cardholders' specific account at issue.

Upon information and belief, when consumers apply for and receive Defendants' credit cards, a process is triggered whereby a consumer can unknowingly and unintentionally sign up to receive ancillary products.

Additionally, Defendants often enroll consumers in these products even though the consumers did not assent to pay for them. This process is referred to as "slamming." Enrollment may be based on highly deceptive and misleading telemarketing calls, forged or non-existent mailers or online applications, or nothing at all. In each instance, unknowing consumers are hit with monthly fees without their meaningful consent or understanding that their credit card will be charged for these products. Defendants are in a position to do this because, unlike a typical marketer or seller, they are already the consumer's credit card company and already have their credit card number.

Further, for certain types of ancillary products ... that all offer similar coverage (hereinafter collectively referred to as "Payment Protection Plans" or "Plans"), that purport to pay the consumer's required minimum monthly payment for a limited period of time under certain triggering circumstances, such as involuntary unemployment, illness, or changes in family status, thus preventing the account from becoming delinquent, Defendants make no effort to determine whether consumers are even eligible for the benefits at the time of sale. As a consequence, Defendants bill ineligible Mississippi citizens for this coverage, even though their status at the time of enrollment prevents them from receiving benefits under the terms of these Payment Protection Plans.

The Defendants commit unfair and deceptive business practices and violate statutory and common law by

4

> charging consumers for ancillary products, including
> Payment Protection Plans, who either did not want them or
> were not entitled to benefit from them, and by the unfair
> and deceptive manner in which Defendants offer and
> administer claims for benefits by consumers.
>
> As a result of these unfair and deceptive practices,
> Defendants have amassed substantial sums of money with
> virtually no benefits to Mississippi citizens who are
> nevertheless charged for these products month in and
> month out.

See <u>Chase</u> Action, Am. Compl., ¶¶ 1-7; <u>HSBC</u> Action, Am. Compl., ¶¶ 1-7; <u>Citigroup</u> Action, Am. Compl., ¶¶ 1-7; <u>Discover</u> Action Am. Compl., ¶¶ 1-7; <u>BOA</u> Action Am. Compl., ¶¶ 1-7; <u>Capital One</u> Action Am. Compl., ¶¶ 1-7. The State further alleges that "[b]y marketing, promoting, advertising and selling Payment Protection Plans, Defendants have engaged in unfair methods of competition affecting commerce and unfair or deceptive trade practices" thereby violating the Mississippi Consumer Protection Act ("MCPA"), codified at Mississippi Code Annotated Section 95-24-1 *et. seq.* See <u>Chase</u> Action, Am. Compl., ¶¶ 70-78; <u>HSBC</u> Action, Am. Compl., ¶¶ 71-79; <u>Citigroup</u> Action, Am. Compl., ¶¶ 71-79; <u>Discover</u> Action, Am. Compl., ¶¶ 75-83; <u>BOA</u> Action, Am. Compl., ¶¶ 70-78; <u>Capital One</u> Action, Am. Compl., ¶¶ 70-78. Through its Amended Complaints, the State of Mississippi seeks the following: (1) injunctive relief barring Defendants from engaging in unfair or deceptive practices that violate the MCPA;[2] (2) monetary judgments "for disgorgement

---

[2] Under the MCPA: "Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice prohibited by Section 75-24-5, and that proceedings would be in the public interest, he may bring an action in the name of the state against such person to restrain by temporary or permanent injunction the use of such method, act

and restitution of monies acquired by Defendants by means of any practice prohibited by the MCPA";[3] (3) declarations that the alleged acts of Defendants constitute multiple violations[4] of the MCPA, and civil penalties for each alleged violation;[5] and (4) attorneys fees and costs as permitted under the MCPA as well as pre- and post-judgment interest.

Each of the lawsuits was removed to this Court.  In their Notices of Removals, Defendants allege that the exercise of diversity-based federal subject matter jurisdiction is proper under the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d), because each of the subject lawsuits is a class action

---

or practice..."   MISS. CODE ANN. § 75-24-9.

[3]   Under the MCPA: "The court may make such additional orders or judgments, including restitution, as may be necessary to restore to any person in interest any monies or property, real or personal, which may have been acquired by means of any practice prohibited by this chapter ..."  MISS. CODE ANN. § 75-24-11.

[4]   According to Hood, each of the following constitutes a separate violation of the MCPA: (1) enrolling a consumer in a Payment Protection Plan without his or her consent; (2) enrolling a consumer in a Payment Protection Plan who was ineligible for benefits under the Plan due to age, work status, disability, etc.; (3) enrolling a consumer in a Payment Protection Plan without disclosing all of the Plan's material restrictions, limitations, and exclusions; and (4) failing to refund any premium that was paid for a Payment Protection Plan.  See e.g. Chase Action, Am. Compl. at ¶ 75.

[5]   Under the MCPA: "In any action brought under Section 75-24-9, if the court finds from clear and convincing evidence, that a person knowingly and willfully used any unfair or deceptive trade practice, method or act prohibited by Section 75-24-5, the Attorney General, upon petition to the court, may recover on behalf of the state a civil penalty in a sum not to exceed Ten Thousand Dollars ($10,000.00) per violation...."  MISS. CODE ANN. § 75-24-19(1)(b).

6

and/or a mass action under the terms of that Act. Defendants further allege that the exercise of federal question subject matter jurisdiction is proper because the state law claims alleged in the subject lawsuits are either (1) completely pre-empted under the National Bank Act ("NBA"), codified at 12 U.S.C. §§ 85-86, or the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"), codified at 12 U.S.C. § 1331(d); or (2) raise a substantial federal question that must be resolved in accordance with the NBA.

Following removal, Motions to Remand were filed in each of the subject lawsuits. The lawsuits were thereafter consolidated for the purpose of deciding those Motions. See Chase Action, Order [Docket Nos. 19 and 20]. The lawsuits were later stayed pending a decision by the United States Court of Appeals for the Fifth Circuit in Mississippi *ex re.* Hood v. AU Optronics Corp., et al., Appeal No. 12-60704. See Order [Docket No. 24].

In deciding AU Optronics, the Fifth Circuit found, *inter alia*, that that *parens patriae* lawsuit was a mass action over which federal subject matter jurisdiction could be exercised under the CAFA.[6] See Mississippi ex rel. Hood v. AU Optronics Corp., et al., 701 F.3d 796 (5th Cir. 2012). After AU Optronics was decided, the appeal-related stay entered by this Court was vacated, and a new

---

[6] After AU Optronics was decided, the State filed a Petition for Rehearing En Banc and a Motion to Recall Mandate with the Fifth Circuit, both of which were denied. See Appeal No. 12-60704 [Orders dated Feb. 4, 2013]. The State then filed a Petition for Writ of Certiorari, which was granted by the United States Supreme Court. See S. Ct. Docket No. 12-1036.

briefing schedule on the Motions to Remand was entered.  See Order [Docket No. 26].  The Motions to Remand have now been fully briefed and will be considered by the Court.

## II.  Discussion

### A.  Procedural Defect in Chase Action

In its Motion to Remand in the Chase Action, the State argues that removal of that case was defective because the Notice of Removal references allegations in the original Complaint as opposed to those in the Amended Complaint.  See Mem. in Supp. of Mot. [Docket No. 12], at 3.[7]  The Chase Action Defendants argue that removal was not defective because they had not yet received a copy of the Amended Complaint at the time their Notice of Removal was filed.  See Mem. in Supp. of Resp. [Docket No. 31], at 34-35.  The Chase Action Defendants also cite to their Response to the Attorney General's Filing of Amended Complaint in State Court ("Response to Filing") in which they claim they had not been served with a copy of the Amended Complaint at the time the lawsuit was removed, and that the exercise of federal jurisdiction would be proper regardless of whether the allegations in the original or Amended Complaint were considered.  See Resp. to Filing [Docket No. 8].

The first issue considered by the Court is whether the Complaint or the Amended Complaint is the operative pleading in the

---

[7]  Unless otherwise indicated, all citations to the pleadings will hereinafter refer to the pleadings filed in the Chase Action, which is docketed as Civil Action No. 3:12-cv-565.

Chase Action.   Relevant to this issue, the record in the Chase

Action shows that the Amended Complaint was filed in state court on

August 6, 2012, and the Notice of Removal was filed on August 7,

2012.   See State Court Record [Docket No. 8], at 31 and 53,

respectively.   Based on the timing of the relevant filings, it is

clear that the state court had jurisdiction at the time the Amended

Complaint was filed.   See e.g. Hampton v. Union Pac. R.R. Co., 81

F.Supp.2d 703, 707 (E.D. Tex. 1999)(explaining that a state court

retains jurisdiction until all three of the following requirements

for removal have been satisfied: (1) filing a notice of removal in

federal court; (2) giving written notice to all adverse parties;

and (3) filing a copy of the notice of removal with the state

court).   As the Amended Complaint was filed in state court at the

time jurisdiction was therein vested, it is the operative pleading

in the Chase Action.   Thus, the Court must consider the allegations

in that complaint when determining whether it may properly exercise

subject matter jurisdiction in the Chase Action.   See Manguno v.

Prudential Prop. and Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir.

2002)("To determine whether jurisdiction is present for removal, we

consider the claims in the state court petition as they existed at

the time of removal.")(citing Cavallini v. State Farm Mut. Auto

Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995)).

The Court now considers whether removal of the Chase Action

was procedurally defective.   Relevant to this issue, the record

shows that the Notice of Removal filed in the Chase Action is based

on the claims alleged in the original Complaint even though the

9

Amended Complaint, by which some of those claims were deleted, had already been filed.[8]  See Not. of Removal [Docket No. 1].  As such, the Court finds the allegations in the Notice of Removal likely contain some defects regarding the bases for exercising federal subject matter jurisdiction.  It is well settled, however, that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."  28 U.S.C. § 1653.  It is also well settled that Section 1653 should be "liberally construed", and that amendment should be permitted in cases in which the "amendment would have done no more than state an alternative jurisdictional basis for recovery upon the facts previously alleged."  Miller v. Stanmore, 636 F.2d 986, 990 (5th Cir. 1981).

Here, following removal, the Chase Defendants filed a Response to Filing claiming that the exercise of federal jurisdiction would be proper regardless of whether the allegations in the original or Amended Complaint were considered.  See Resp. to Filing.  Under the circumstances of this case, the Court finds the Response to Filing should be construed as a Section 1653 amendment to the Notice of Removal because it does no more than allege that the jurisdictional bases for removal remained the same even though the allegations in the Amended Complaint differed from those in the

---

[8]  The Amended Complaint was allegedly served sometime on August 7, 2012, which is the same date the Notice of Removal was filed.  The Court finds the date of service is not relevant because it is undisputed that the Amended Complaint was filed in state court on August 6, 2012.

10

original Complaint.[9]  With the amendment, the Court finds that any procedural defect arising because references were made to the original Complaint in Notice of Removal have been cured. Accordingly, the Court finds the Motion to Remand, to the extent it seeks remand of the <u>Chase</u> Action based on purported procedural defects in removal, should be denied.

## B.  Class Action Jurisdiction under 28 U.S.C. § 1332(d)(2)

Under 28 U.S.C. § 1332(d):

(2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –

(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;

(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2).  In its Motions to Remand, the State argues that federal subject matter jurisdiction cannot be exercised based on the class action provision of the CAFA.  The Court agrees.

The Fifth Circuit recently discussed the class action provision of Section 1332(d) in the case of <u>Mississippi ex rel. Hood v. AU Optronics Corp., et al.</u>, 701 F.3d 796 (5th Cir. 2012). In that case, the State of Mississippi had brought a *parens patriae*

---

[9]  To the extent leave was required to amend the Notice of Removal under 28 U.S.C. § 1653, it is hereby granted.

lawsuit against multiple manufacturers, marketers, sellers, and distributors of liquid crystal display ("LCD") panels alleging they had violated the MCPA and the Mississippi Antitrust Act. The defendants removed the lawsuit claiming, in part, that it was a class action under the CAFA. Disagreeing, the Fifth Circuit found:

> Under the CAFA, removal of a suit to federal court is proper if the suit qualifies as a "class action" or a "mass action." See 28 U.S.C. § 1453(b); 28 U.S.C. § 1332(d)(11)(A). Our analysis begins by considering whether Mississippi's suit against the LCD manufacturers qualifies as a "class action," a question that can be answered quickly in the negative. Under the relevant provision, a class action is defined as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Because Mississippi did not bring this suit under Rule 23 or a rule of judicial procedure and because Mississippi state law explicitly prohibits class actions, see American Bankers Ins. Co. of Fla. v. Booth, 830 So.2d 1205, 1214 (Miss. 2002) ("[T]he rule is that Mississippi does not permit class actions, even equitable class actions in chancery court."), the only question is whether the suit is brought under a state statute "similar" to Rule 23. This suit was brought under the Mississippi Consumer Protection Act ("MCPA"), MISS. CODE ANN. § 75-24-1 et seq. and the Mississippi Antitrust Act ("MAA"), MISS. CODE ANN. § 75-21-1 et seq. The MCPA explicitly forbids class actions, see MISS. CODE ANN. § 75-24-15(4), and the MAA does not require that suits brought by the State satisfy any requirements that resemble the adequacy, numerosity, commonality, and typicality requirements of class action lawsuits under Rule 23, see MISS. CODE ANN. § 75-21-7. It is thus clear that neither the MCPA nor the MAA, the statutes under which Mississippi brings the present suit, are "similar" to Rule 23. Accordingly, we hold that the district court did not err in finding that the suit does not qualify as a "class action" under the CAFA.

AU Optronics, 701 F.3d at 799.

Here, as in AU Optronics, the subject lawsuits are predicated on alleged violations of the MCPA. Following AU Optronics, the

Court finds the subject lawsuits cannot qualify as class actions under the CAFA for the same reasons given by the Fifth Circuit, namely: (1) the subject lawsuits are not brought under Rule 23; (2) Mississippi law explicitly prohibits class actions; and (3) the MCPA explicitly forbids class actions.  Accordingly, the Court finds it cannot exercise federal subject matter jurisdiction over the subject lawsuits under the class action provision of the CAFA.

**C.  Mass Action Jurisdiction under 28 U.S.C. § 1332(d)(11)**

Under the CAFA, district courts may exercise federal subject matter jurisdiction over mass actions.  See 28 U.S.C. § 1332(d)(11)(A)("For purposes of this subsection ... a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.").  "[T]he term 'mass action' means any civil action ... in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount [of $75,000]."  28 U.S.C. § 1332(d)(11)(B)(i).

Here, the first requirement of a mass action is satisfied because each of the subject lawsuits is a civil action that contains a claim for monetary relief.  See Chase Action, Am. Compl., Ad Damnum ¶ 3 (seeking judgment "for disgorgement and restitution of monies acquired by Defendants by means of any

13

practice prohibited by the MCPA."); <u>HSBC</u> Action, Am. Compl., Ad Damnum ¶ 3 (same); <u>Citigroup</u> Action, Am. Compl., Ad Damnum ¶ 3 (same); <u>Discover</u> Action Am. Compl., Ad Damnum ¶ 3 (same); <u>BOA</u> Action Am. Compl., Ad Damnum ¶ 3 (same); <u>Capital One</u> Action Am. Compl., Ad Damnum ¶ 3 (same).

The second requirement for a mass action is numerosity, i.e. the lawsuit must involve claims of 100 or more persons. Here, in its Motions to Remand, the State argues the subject lawsuits cannot be considered mass actions because it is the only plaintiff named in each Amended Complaint and, therefore, the lawsuits "fall 99 persons short" of the 100 required for a mass action under the CAFA. <u>See</u> Mem. in Supp. of Mot., at 11. In subsequent pleadings, the State acknowledges that its numerosity objection is inconsistent with the decision in <u>AU Optronics</u>. <u>See</u> Supp. Mem. of Law [Docket No. 27], at 6 n.5. The Court agrees that the numerosity objection raised by the State in support of its initial Motions to Remand is untenable under Fifth Circuit precedent.

In this Circuit, when considering whether the mass action requirements of the CAFA are satisfied in lawsuits brought by a state, district courts are "to look at each claim in the complaint and assess, claim-by-claim, who would benefit from prosecuting that claim." <u>Mississippi ex rel. Hood v. Entergy Miss., Inc.</u>, 2012 WL 3704935, at *7 (S.D. Miss. Aug. 25, 2012)(citing <u>Louisiana *ex rel.* Caldwell v. Allstate Ins. Co</u>, 536 F.3d 418 (5th Cir. 2008)) (alterations in original). As recently explained by the Fifth Circuit:

14

> <u>Caldwell</u> instructs us to pierce the pleadings and look at the real nature of a state's claims so as to prevent jurisdictional gamesmanship. <u>See</u> <u>Caldwell</u>, 536 F.3d at 424–25, 429 ("It is well-established that in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach.... This court has recognized that defendants may pierce the pleadings to show that the claim has been fraudulently pleaded to prevent removal."). The <u>Caldwell</u> claim-by-claim approach contrasts with other circuits that look to a state's complaint "as a whole" and then subjectively determine if the state alone is the real party in interest. <u>Caldwell</u>, binding precedent on this court, effectively defined "persons" in the mass action context to be the real parties in interest as to the respective claims. <u>See</u> <u>Caldwell</u>, 536 F.3d at 424–25, 429.

<u>AU Optronics</u>, 701 F.3d at 799-800 (alterations in original) (internal citations omitted).

In the subject lawsuits, the State of Mississippi is the sole real party in interest with respect to the claims for injunctive relief and civil penalties under the MCPA, because such claims can only be brought by the State through its attorney general. <u>See</u> MISS. CODE ANN. § 75-24-9 (providing: "Whenever the Attorney General has reason to believe that any person is using ... any method, act or practice prohibited by Section 75-24-5, and that proceedings would be in the public interest, he may bring an action <u>in the name of the state</u> against such person to restrain by temporary or permanent injunction the use of such method, act or practice...")(emphasis added); MISS. CODE ANN. § 75-24-19(1)(b) (providing: "In any action brought under Section 75-24-9, if the court finds from clear and convincing evidence, that a person knowingly and willfully used any unfair or deceptive trade practice, method or act prohibited by Section 75-24-5, the Attorney

General, upon petition to the court, may recover <u>on behalf of the</u>
<u>state</u> a civil penalty in a sum not to exceed Ten Thousand Dollars
($10,000.00) per violation....")(emphasis added).  The Court finds,
however, under <u>AU Optronics</u>, that the State would not be the sole
real party in interest with respect to the claim for restitution
under the MCPA.

In <u>AU Optronics</u>, the State of Mississippi filed a lawsuit
seeking, *inter alia*, restitution on behalf of itself and its
citizens for damages suffered as a result of purchasing LCD panel
products.  Restitution was sought based on allegations that the
manufacturers, marketers, sellers, and distributors of those panels
had violated the MCPA.  <u>See</u> <u>Mississippi *ex rel*. Hood v. AU</u>
<u>Optronics Corp.</u>, 876 F.Supp.2d 758, 762 (S.D. Miss. 2012).
Applying <u>Caldwell</u>, the Fifth Circuit found:

> The real parties in interest in Mississippi's suit are
> those more than 100 persons who, "by substantive law,
> possess the right sought to be enforced, and not
> necessarily the person who will ultimately benefit from
> the recovery." <u>Richards v. Reed</u>, 611 F.2d 545, 546 n.2
> (5th Cir. 1980); CHARLES ALAN WRIGHT & MARY KAY LANE, LAW OF
> FEDERAL COURTS 492 (6th ed. 2002).  We find that the real
> parties in interest are numerous — far in excess of 100.
> Contrary to the State's assertions, Mississippi is thus
> not the sole party in interest.  Instead, the State (as
> a purchaser of LCD products) and individual citizens who
> purchased the products within Mississippi possess "rights
> sought to be enforced."

<u>AU Optronics</u>, 701 F.3d at 800.  The decision that the LCD panel
purchasers were real parties in interest for the purpose of
determining whether the numerosity requirement for a mass action
had been satisfied was based on: (1) a review of the allegations in
the complaint that showed the claim for monetary damages was based,

in part, on injuries allegedly suffered by the individual purchasers; (2) a review of the MCPA, which the Fifth Circuit found did not "give[] the State authority to enforce claims for injuries suffered by others"; and (3) a finding that some of the claims alleged by the State were outside the scope of a *parens patriae* action because they were based on harm allegedly suffered by individual claimants. Id. at 800-02.

Here, as in AU Optronics, the claims for restitution are based on allegations that Mississippi credit card holders have been injured because they were "slammed" into purchasing payment protection plans without their consent, without their full understanding, and/or from which they would receive no benefit. See e.g. Am. Compl. at ¶4 ("[U]nknowing consumers are hit with monthly fees without their meaningful consent or understanding that their credit card will be charged for these products."); Id. at ¶5 ("As a consequence, Defendants bill ineligible Mississippi citizens for this coverage, even though their status at the time of enrollment prevents then from receiving benefits under the terms of these Payment Protection Plans."); Id. at ¶7 ("As a result of these unfair and deceptive practices, Defendants have amassed substantial sums of money with virtually no benefits to Mississippi citizens who are nevertheless charged for these products month in and month out."). Second, as in AU Optronics, the Amended Complaints are brought pursuant to the MCPA, "no provision of [which] gives the State authority to enforce claims for injuries suffered by others. In other words, the statute does not authorize public collection of

17

private damages." AU Optronics, 709 F.3d at 800-01. Finally, as in AU Optronics, the Court finds it is clear that the State is, with regard to its claim for restitution, pursuing the interests of the allegedly injured Mississippi credit card holders.[10] For these reasons, the Court finds the Mississippi credit card holders are real parties in interest for the purposes of determining whether the mass action numerosity requirement has been satisfied. As there are more than one-hundred Mississippi credit card holders who are real parties in interest in each of the subject lawsuits, the Court finds the numerosity requirement for a mass action under the CAFA has been shown to be satisfied in each case. See Not. of Removal (Chase Action), at ¶ 25 ("According to Chase's records, there are thousands of Mississippi residents" who have been billed for payment protection plans); Not. of Removal (HSBC Action), at ¶ 25 ("According to Defendants' records, there are thousands of

---

[10] The State argues that the subject lawsuits are distinguishable from Crawford and AU Optronics because Hood has disavowed bringing them "on behalf of a class or any group of persons that can be construed as a class", and has "disclaim[ed] any such claims that would support removal of this action ... on the basis of diversity or jurisdictional mandates under the [CAFA]." See Supp. Mem. of Law (quoting Am. Compl. at ¶ 16). The lawsuits, however, expressly request restitution in the amount of "monies acquired by Defendants by means ... prohibited" under the MCPA. The Amended Complaints further allege that the "monies" were acquired because Defendants slammed Mississippi credit card holders. As the State cannot, in its own name, seek restitution for injuries suffered by others under the MCPA, see AU Optronics, 701 F.3d at 800-01, the demand for restitution necessarily implies that the claim is being brought by (or for the benefit of) the Mississippi credit card holders who were allegedly "slammed". Thus, the Court finds the State has failed to show that Crawford or AU Optronics should be distinguished based on the allegations in the Amended Complaints.

Mississippi residents" who have been billed for payment protection plans); Not. of Removal (<u>Citigroup</u> Action), at ¶ 28 ("[T]here are more that 100 accounts with Mississippi billing addresses that have been enrolled in payment protection plans..."); Not. of Removal (<u>Discover</u> Action), at ¶ 26 ("According to Defendants' records, there are thousands of Mississippi residents" who have been billed for payment protection plans); Not. of Removal (<u>BOA</u> Action), at ¶ 26 ("According to FIA's records, there are thousands of Mississippi residents" who have been billed for payment protection plans); Not. of Removal (<u>Capital One</u> Action), at ¶ 25 ("According to Capital One's records, there are thousands of Mississippi residents" who have been billed for payment protection plans). Accordingly, the Court finds the Motions to Remand, to the extent they seek remand based on the purported failure to satisfy the numerosity requirement necessary for maintaining a mass action under the CAFA, should be denied.

Having found that Mississippi credit card holders are real parties in interest with respect to the claims for restitution under the MCPA, the Court additionally finds the argument by the State that the subject lawsuits are excepted from the mass action provision of the CAFA is not well taken. In its Motions to Remand, the State argues that the subject lawsuits cannot be treated as mass actions because the CAFA excepts "civil actions in which all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically

19

authorizing such action." Mem. in Supp. of Mot., at 6-7 (citing 28 U.S.C. § 1332(d)(11)(b)(ii)(III)).[11]  As discussed above, however, in the subject lawsuits the restitution claims under the MCPA are necessarily being brought by the State on behalf of, or for the benefit of, the Mississippi credit card holders who are the real parties in interest with respect to those claims.  Because the individual Mississippi credit card holders "are real parties in interest" with respect to the restitution claims, "there is no way that 'all of the claims' [in the subject lawsuits] are 'asserted on behalf of the general public.'"  AU Optronics, 701 F.3d at 802 (quoting 28 U.S.C. § 1332(d)(11)(B)(ii)(III)).  Accordingly, the Court finds the general public exception to a mass action under the CAFA is not applicable in the subject lawsuits and, therefore, the Motion to Remand on that basis should be denied.

The finding that Mississippi credit card holders are real parties in interest also negates the argument by the State that the minimum diversity requirement of the CAFA has not been satisfied. In its Motions to Remand, the State argues that diversity between the parties cannot exist because it is the only named plaintiff in each of the subject lawsuits and, as a state, it does not have citizenship for the purpose of exercising diversity jurisdiction. See Mem. in Supp. of Mot., at 14.  As discussed above, however, citizens of Mississippi, by virtue of their being the allegedly

---

[11]   Following the decision in AU Optronics, the State has acknowledged that its general public exception argument is inconsistent with that decision.  See Supp. Mem. of Law, 6 n.5.

injured consumers/credit card holders, are considered members of
the purported mass actions in each of the subject lawsuits based on
their status as real parties in interest.  None of the defendants
in any of the subject lawsuits are Mississippi citizens.  <u>See</u> <u>Chase</u>
Action, Not. of Removal, ¶¶ 6-7 (identifying JP Morgan Chase & Co.
as a Delaware corporation with its principal place of business in
New York; and identifying Chase Bank USA, N.A., as a banking
association in Delaware); <u>HSBC</u> Action, Not. of Removal, ¶ 7
(identifying HSBC Bank Nevada, N.A., as a banking association in
Nevada, identifying Delaware HSBC Card Services, Inc., as a
Delaware corporation with its principal place of business in
Illinois, and identifying HSBC USA, N.A., as a banking association
in Virginia); <u>Citigroup</u> Action, Not. of Removal, ¶¶ 8-10
(identifying Citigroup, Inc., as a Delaware corporation with its
principal place of business in New York, identifying Citibank N.A.,
as a banking association in South Dakota, and identifying
Department Stores National Bank as a banking association in South
Dakota); <u>Discover</u> Action, Not. of Removal, ¶ 8 (identifying
Discover Financial Services, Inc., as a non-existent entity,
identifying Discover Bank, as a chartered bank in Delaware,
identifying DFS Services, L.L.C., as having one member that is a
Delaware corporation with its principal place of business in
Illinois, and identifying American Bankers Management Company,
Inc., as a Florida corporation with its principal place of business
in Florida); <u>BOA</u> Action Notice of Removal, ¶¶ 7-8 (identifying Bank
of America Corporation, as a Delaware corporation with its

21

principal place of business in North Carolina, and identifying FIA Card Services, N.A., as a banking association in Delaware); Capital One Action, Not. of Removal, ¶¶ 9-10 (identifying Capital One Bank (U.S.A.), N.A., as a banking association in Virginia, and identifying Capital One Services, as being incorporated in Delaware and having its principal place of business in Virginia). As the citizenship of at least one mass action member differs from that of Defendants in each of the subject lawsuits, the Court finds the minimum diversity requirement of the CAFA has been shown to be satisfied. See 28 U.S.C. § 1332(d)(2)(A)(providing that diversity jurisdiction may be exercised under the CAFA in cases in which "any member of a class of plaintiffs is a citizen of a State different from any defendant."). Accordingly, the Court finds the Motions to Remand, to the extent they seek remand based on an alleged lack of minimum diversity, should be denied.

The third requirement for a mass action is that the claims of its members are proposed to be tried jointly and involve common questions of law or fact. The Court finds the restitution claims in the subject lawsuits all involve common questions of law because each claim is predicated on allegations that Defendants violated the MCPA. The subject lawsuits also raise common questions of fact because, in each Amended Complaint, it is alleged that Defendants committed unfair and deceptive business practices against Mississippi credit card holders with respect to Payment Protection Plans by, inter alia: (1) causing card holders to unknowingly or unintentionally enroll in such Plans or enrolling card holders

without their consent; (2) using misleading information or providing no disclosures regarding the Plans; (3) failing to determine whether card holders are eligible for the benefits available under such Plans at the time they are sold; and (4) unfairly administering claims for benefits under such Plans. Finally, because Mississippi credit card holders are the real parties in interest for the purpose of the restitution claims alleged in the subject lawsuits, the Court finds their claims are necessarily proposed to be tried jointly.

The final issue to be considered by the Court is that concerning the amounts in controversy. Under the CAFA, a mass action may be considered a class action for the purposes of removal if it meets the requirements of 28 U.S.C. § 1332(d)(2)-(10). <u>See</u> 28 U.S.C. § 1332(d)(11)(A). Section 1332(d)(2) requires that the amount in controversy in a class action exceed $5,000.000. Here, the State does not dispute whether the $5,000,000 amount in controversy has been satisfied in each of the subject lawsuits. <u>See</u> Mem. in Supp. of Mot., at 13 ("Defendants state they have collected at least five million dollars from their Mississippi customers, which is troubling enough considering the most vulnerable are targeted for these unconscionable charges.").

Although the State does not challenge the $5,000,000 class action threshold, it does challenge the $75,000 requirement in 28 U.S.C. § 1332(d)(11)(B)(i), which provides "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdiction requirement" of $75,000. Relying on

23

Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676 (9th Cir. 2006), the State argues that the $75,000 requirement is jurisdictional, and that the subject lawsuits should be remanded because Defendants have failed to show that the claim of any putative mass action member exceeds that amount.  See Abrego, 443 F.3d at 689 (finding that a lawsuit was subject to remand because the defendant had "not established that even one plaintiff satisfie[d] the $75,000 jurisdictional amount requirement of § 1332(a), applicable to mass actions by virtue of § 1332(d)(11)(B)(i)", and concluding that a mass action claim "cannot go forward unless there is at least one plaintiff whose claims can remain in federal court.").

In response, Defendants argue that they are not required to establish that any mass action member has a claim exceeding $75,000 in order to remove the subject lawsuits under the CAFA.  According to Defendants, under the plain language of that Act, a lawsuit is removable as a mass action if it meets the statutory definition of such action, and if the requirements for a class action are satisfied.  See 28 U.S.C. § 1332(d)(11)(A)("[A] mass action shall be deemed a class action removeable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs."); Id. at § 1332(d)(2)("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and cost, and is a class action ...").  Defendants further argue that "the initial question of whether a mass action is removeable is

24

separate and distinct from the subsequent question of whether the claims of any of the real parties in interest should be severed and remanded based on the $75,000 amount-in-controversy requirement." See Mem. in Supp. of Resp. at 21.   In support of its arguments, Defendants cite to Lowery v. Alabama Power Co., 483 F.3d 1184 (11th Cir. 2007), and Mississippi v. Entergy, 2012 WL 3704935 (S.D. Miss. Aug. 25, 2012).

Having reviewed the statutes, and cited authorities, the Court agrees with the analysis of United States District Judge Henry T. Wingate in the case of Mississippi v. Entergy, 2012 WL 3704935 (S.D. Miss. Aug. 25, 2012). In Entergy, the positions of the parties were identical to those advanced in the subject lawsuits. There, the State argued that the removing party had the burden to show that at least one plaintiff had a claim valued at more than $75,000 before the case could be properly removed as a mass action. Id. at *9-10.   Entergy took the position that evaluating mass action jurisdiction under the CAFA involves a two-step process. First, the court considers whether the lawsuit was properly removed by examining whether the following jurisdictional factors are satisfied: (1) an aggregate amount in controversy of $5,000,000; (2) minimal diversity; and (3) monetary claims of 100 or more persons that involve common questions of law or fact.   If the court finds the case was properly removed, it proceeds to the second step at which it remands any plaintiff whose claim does not satisfy the $75,000 individual amount in controversy requirement.   Judge Wingate was persuaded that the position argued by Entergy was

"consistent with the language of the statute, [and] a reasonable interpretation of the wording in the context of CAFA as a whole, and with the legislative history behind its enactment." Id. at *9. As reasoned by Judge Wingate:

> The plain reading of the statute indicates that the $75,000 individual amount in controversy is an exception to CAFA jurisdiction, not a threshold requirement. The Lowery court examined this issue and found it inconclusive. But this court reads the definition of mass action to indicate by its plain language that the $75,000 amount in controversy requirement to be an exception to or exclusion from CAFA jurisdiction. The statute defines a mass action as:
>
>> any civil action [ ... ] in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)[$75,000, exclusive of interest and costs]. Title 28 U.S.C. § 1332(d)(11)(B)(i)(emphasis added).
>
> Congress described the characteristics of a mass action and then stated "except that" jurisdiction may be maintained only over certain claims within that universe. The mass action refers to the entire lawsuit, which must meet the numerosity requirement and have claims aggregated based on common law and fact. This language indicates that Congress intended to create broader jurisdiction, and then eliminate those claims that do not meet certain requirements found in § 1332(a).
>
> Merriam-Webster's Collegiate Dictionary, 10th edition, defines the word "except" as "with the exclusion or exception of; to take out or leave out from a number or a whole; exclude [ ... ] ." Merriam-Webster's includes the word "only" as a definition of except, illustrating it with the sentence "I would go except that it's too far." This court reads the most appropriate definition within the context of the statutory language to be to take out or leave out from a number or a whole. This interpretation is consistent with the statutory language which distinguishes jurisdiction over the lawsuit from

the amount in controversy requirement for individual
claims.

The <u>Lowery</u> court expressed concern that this reading
possibly could leave the court with jurisdiction over a
lawsuit, where no plaintiffs can meet the individual
amount in controversy requirement.  483 F.3d at 1204.
This is a valid concern, which has not been answered to
date.  A lawsuit without even a single plaintiff cannot
be considered a class or mass action.  This court has
examined the statutory language and applied cannons of
interpretation to do the least damage to the statute,
while applying it in a pragmatic way to the facts before
it.

The cannons of statutory interpretation direct this
court, when possible, to "give effect ... to every word
and clause" and to read the language in question "in the
context of the statute as a whole." <u>Id.</u> at 1204.  To
find that jurisdiction requires that all plaintiffs have
claims which exceed the $75,000 amount in controversy at
the time of removal, when interpreted within the statute
as a whole, would necessarily render the aggregate amount
in controversy requirement as mere surplusage. <u>Id.</u> Mass
action jurisdiction unquestionably requires claims of 100
plaintiffs or more which have an aggregate amount in
controversy over $5,000,000. <u>Id.</u>; Title 28 U.S.C. §§
1332(d)(2), (d)(11)(b)(i).  If the "$75,000 individual
amount in controversy requirement" were also a threshold
jurisdictional requirement, lawsuits which met this
requirement would necessarily have an aggregate amount in
controversy of $7,500,000 (100 plaintiffs X $75,000 =
$7,500,000).  <u>Lowery</u>, 483 F.3d at 1204-1205.

When the plain language of the statute and application of
cannons of interpretation do not definitely decide the
issue, legislative history may serve as a useful tool to
interpret a statute.  The Committee Report on the bill
introducing CAFA, Senate Judiciary Committee, Senate
Report 109-14, states that:

> Subsection 1332(d)(11)(B)(i) includes a
> statement indicating that jurisdiction exists
> only over those plaintiffs whose claims in a
> mass action satisfy the jurisdictional amount
> requirements under section 1332(a).  The
> Committee notes that the intent of this
> proviso is as follows. If a mass action
> satisfies the criteria set forth in the
> section (that is, it involves the monetary
> relief claims of 100 or more persons that are

proposed to be tried jointly on the ground that the claims involve common questions of law or fact and it meets the tests for federal diversity jurisdiction otherwise established by the legislation), it may be removed to a federal court, which is authorized to exercise jurisdiction over the action. Under the proviso, however, it is the Committee's intent that any claims that are included in the mass action that standing alone do not satisfy the jurisdictional amount requirements of Section 1332(a) (currently $75,000), would be remanded to state court. Subsequent remands of individual claims not meeting the section 1332 jurisdictional amount requirement may take the action below the 100-plaintiff jurisdictional threshold or the $5 million aggregated jurisdictional amount requirement. However, so long as the mass action met the various jurisdictional requirements at the time of removal, it is the Committee's view that those subsequent remands should not extinguish federal diversity jurisdictional over the action.

Legislative history cannot control the decision of this court, and resort to its counsel is generally only appropriate if the court finds the statute to be ambiguous. See McLaurin v. Noble Drilling, Inc., 529 F.3d 285, 288 (5th Cir. 2008). But in instances where the disputed issue is not authoritatively resolved by reference to the statute, reliance on legislative history may be helpful. Id. In this case the legislative history explicitly addresses the question before the court and is fully consistent with this court's own reading of the statute.

Entergy, 2012 WL 3704935, at *10-11.

Having considered the statutory language of the CAFA and the authorities cited by the parties, the Court agrees with Judge Wingate's conclusion that "[t]he plain reading of the statute indicates ... the $75,000 individual amount in controversy is an exception to CAFA jurisdiction, not a threshold requirement." First, by its plain language, the CAFA deems a mass action to be a

28

class action that is removeable to federal court if it satisfies the provisions of Section 1332(d)(2) through (10). See 28 U.S.C. § 1332(d)(11)(A). See also Bullard v. Burlington N. Santa Fe Ry. Co., 535 F.3d 759, 762 (7th Cir. 2008)(explaining that Section 1332(d)(11) "defines a class action to include a mass action."); Abraham v. St. Croix Renaissance Group, L.L.L.P, --- F.3d ---, 2013 WL 2128539, at *4 (3d Cir. May 17, 2013)(explaining that the "plain text" of 28 U.S.C. § 1332(d)(11) "makes [the] treatment of 'class actions' equally applicable to 'mass actions.'"). Nothing in Section 1332(d)(2)-(10) requires that at least one claimant in a class action have a claim in excess of $75,000 before the case can be removed to federal court. See e.g. Cappuccitti v. DirecTV, Inc., 623 F.3d 1118, 1122 (11th Cir. 2010)("There is no requirement in a class action brought originally or on removal under CAFA that any individual plaintiff's claim must exceed $75,000.")(citing 14AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3704 (Supp. 2010)("CAFA ... extends federal subject matter jurisdiction to class actions when there is minimal diversity and the total amount in controversy exceeds $5,000,000, exclusive of interest and costs, and provides for aggregation even if no individual class member asserts a claim that exceeds $75,000.")). As there is no statutory requirement that at least one class member have a claim in excess of $75,000 to permit removal under the CAFA, and as a mass action is deemed a class action under that statute, the Court finds there can be no statutory requirement that at least one mass action member have a

29

claim in excess of $75,000 to permit removal. The Court additionally finds that such requirement cannot be read into the statute as urged by the State. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 558 (2005)(explaining that while federal courts cannot "give jurisdictional statutes a more expansive interpretation than their text warrants", "it is just as important not to adopt an artificial construction that is narrower than what the text provides.").

Second, as discussed by Judge Wingate, the $75,000 individual amount in controversy is an exception to CAFA jurisdiction. See 28 U.S.C. § 1332(d)(11)(B)(i)(providing that jurisdiction over a mass action "exists only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount [of $75,000]."). In this Circuit, the burden to show that an exception to CAFA jurisdiction exists is one that must be carried by the party seeking remand. See e.g. Preston v. Tenet Healthsystem Med. Ctr., Inc., 485 F.3d 793, 797 (5th Cir. 2007)(reaffirming that the party moving for remand "must prove that the CAFA exceptions to federal jurisdiction divest the district court of subject matter jurisdiction."). See also Williams v. Homeland Ins. Co. of N.Y., 657 F.3d 287, 290 (5th Cir. 2011)("The parties moving for remand bear the burden of proof that they fall within an exception to CAFA jurisdiction"). Thus, under Fifth Circuit precedent, the defendants in the subject lawsuits would not have the burden to prove that the Section 1332(d)(11)(B)(i) exception is not applicable, i.e. that the claim of any potential mass member is in an amount greater than $75,000.

Instead, the burden to prove the exception applies would have to be carried by the individual mass action members, who would have to prove that his or her claim was for an amount less than $75,000 and, therefore, that the Court could not exercise subject matter jurisdiction over that claim.

In sum, having reviewed the pleadings, the Court finds Defendants have satisfied their burden of showing that the restitution claim in each of the subject lawsuits satisfies the mass action requirements of the CAFA and, therefore, are removable under that Act. In each lawsuit, Defendants have shown that there exists: (1) an aggregate amount in controversy of $5,000,000; (2) minimum diversity; (3) a claim for monetary relief; (4) more than 100 parties in interest; and (5) a claim that involves a common question of law and fact. As such, the Court finds that each of the subject lawsuits was removeable as a mass action under the CAFA and, therefore, that it can properly exercise subject matter jurisdiction based on diversity over the restitution claim in each case, and exercise supplemental jurisdiction over the remaining claims. As each lawsuit was properly removed under the mass action provisions of the CAFA, the Court finds the Motions to Remand should be denied.

The Court is aware that its finding that the lawsuits were properly removed as mass actions under the CAFA does not end its jurisdictional inquiry because it must still consider the individual $75,000 amount in controversy requirement of 28 U.S.C. § 1332(d)(11)(b)(i). Such query, however, cannot presently be made

because the identity of the mass action members is unknown.

As discussed above, under <u>Crawford</u> and <u>AU Optronics</u>, the Court is required to find that the Mississippi credit card holders for whom monetary damages are sought are the real parties in interest with respect to the restitution claims under the MCPA. These cardholders, however, are not plaintiffs in the subject lawsuits. As the cardholders are not plaintiffs to the litigation, the Court cannot presently determine whether the claim of any individual cardholder exceeds the jurisdictionally required amount in controversy of $75,000.00,[12] or whether the claim of any individual cardholder should be remanded to state court for failing to meet that threshold.  <u>See</u> 28 U.S.C. S 1332(d)(11)(B)(i)(providing that "jurisdiction shall exist only over those <u>plaintiffs</u> whose claims in a mass action satisfy the jurisdictional amount

_____

[12]  In its Amended Complaints, the State alleges that none of the credit card holders have claims in excess of $75,000.  <u>See</u> Am. Compl. at ¶ 16 (alleging "federal jurisdiction does not exist because the amount in controversy for any individual Mississippi consumer is less than $75,000., exclusive of interests and costs.").  The Court finds this allegation is insufficient to satisfy the exception to CAFA jurisdiction under 28 U.S.C. § 1332(d)(11)(b)(i).  First, there has been no showing that the State knows either the identity of any credit card holder, or the amount paid by such card holder for Payment Protections Plans.  As such, the allegation that no credit card holder has a claim in excess of $75,000.00, appears to be rank speculation.  Second, the attempt by the State to limit the amount of restitution that could be recovered by any credit card holders is not binding on the Court.  <u>See</u> <u>e.g.</u> <u>Standard Fire Ins. Co. v. Knowles</u>, --- U.S. ---, 133 S.Ct. 1345, 1349 (2013)(holding that the attempt to limit the amount of damages sought through litigation by a party proceeding in a representative capacity under the CAFA was not legally binding on the individuals he sought to represent, and could not "reduce[] the value of the putative class members' claims.").

requirements")(emphasis added).

Again, as no Mississippi credit card holder was named a plaintiff in any of the subject lawsuits (even though the card holders are considered members of the mass actions based on their status as parties in interest under Crawford and AU Optronics), the first task for the Court is to have the card holders identified. Fortunately, in these cases information regarding the names and addresses of the credit card holders is likely readily available based on the on-going contractual relationship that exists between them and the defendant creditors.[13]  Once the credit card holders are identified, they will need to be joined as plaintiffs in the subject lawsuits, presumably pursuant to Rule 19 of the Federal Rules of Civil Procedure, even though it is unlikely that they have knowledge of this case or of a potential claim for damages under the MCPA.  After being joined as plaintiffs, the Court would then undertake the task of determining which, if any, of the unwitting mass action plaintiffs have claims for restitution in excess of $75,000.  Plaintiffs whose claims are above the threshold would remain in federal court, while plaintiffs whose claims fall below the threshold would be remanded to state court.  See 28 U.S.C. § 1332(d)(11)(B)(i).  In the event all of the mass action plaintiffs are subsequently remanded to state court, the mass action restitution claim would likely be subject to dismissal, either

---

[13]  A more daunting task awaits the trial court in AU Optronics as it is less likely that the manufactures, distributors, and sellers of the LCD panels will be in possession of such information.

based on mootness, see e.g. Preiser v. Newkirk, 422 U.S. 395, 401 (1975)(explaining that federal courts do not have the power to "decide questions that cannot affect the right of litigants in the case before them"), or on a *sua sponte* review under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the claim for restitution would no longer be one upon which relief could be granted.  If the restitution claim, which is the only claim upon which federal subject matter jurisdiction attached under the CAFA, was dismissed, the Court would then have to consider whether to retain supplemental jurisdiction over the remaining MCPA claims. See 28 U.S.C. § 1367(c)(3)("The district court may decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction.").

Thus, in order for the Court to assure itself of its ability to retain subject matter jurisdiction over the now removed mass action restitution claims, the next procedural step will be to require the parties to preliminarily engage in limited discovery to identity the Mississippi credit card holders, and then determine the amount in controversy with respect to each card holder's restitution claim.

## D.  Complete Preemption Under the NBA

In their Notices of Removal, Defendants claim that the Court may exercise federal question jurisdiction over the subject lawsuits on the grounds of complete pre-emption.

> Under the complete-preemption doctrine, certain federal
> statutes are construed to have such "extraordinary"
> preemptive force that state-law claims coming within the
> scope of the federal statute are transformed, for
> jurisdictional purposes, into federal claims - i.e.,
> completely preempted. See Metro. Life Ins. Co. v.
> Taylor, 481 U.S. 58, 65 (1987).  When a plaintiff raises
> such a completely preempted state-law claim in his
> complaint, a court is obligated to construe the complaint
> as raising a federal claim and therefore "arising under"
> federal law.

Sullivan v. American Airlines, Inc., 424 F.3d 267, 272 (2D Cir.

2005)(alterations in original).  See also Vaden v. Discover Bank,

556 U.S. 49, 61 (2009)(explaining that a "complaint purporting to

rest on state law ... can be recharacterized as one 'arising under'

federal law."  Under the complete preemption doctrine, "a

plaintiff's state cause of action may be recast as a federal claim

for relief, making its removal by the defendant proper on the basis

of federal question jurisdiction.")(alterations in original)

(citations omitted).  For complete preemption to apply, there must

be a showing that "Congress intended a federal act to provide the

exclusive cause of action for the claims at issue."  Bernhard v.

Whitley Nat'l Bank, 523 F.3d 546, 553 (5th Cir. 2008).

Federal question jurisdiction in the Chase Action, HSBC

Action, Citigroup Action, BOA Action, and Capital One Action is

claimed on the National Bank Act ("NBA"), which provides:

> Any association may take, receive, reserve, and charge on
> any loan or discount made, or upon any notes, bills of
> exchange, or other evidences of debt, interest at the
> rate allowed by the laws of the State, Territory, or
> District where the bank is located, or at a rate of 1 per
> centum in excess of the discount rate on ninety-day
> commercial paper in effect at the Federal reserve bank in
> the Federal reserve district where the bank is located,
> whichever may be the greater, and no more, except that

> where by the laws of any State a different rate is
> limited for banks organized under State laws, the rate so
> limited shall be allowed for associations organized or
> existing in any such State under title 62 of the Revised
> Statutes.  When no rate is fixed by the laws of the
> State, or Territory, or District, the bank may take,
> receive, reserve, or charge a rate not exceeding 7 per
> centum, or 1 per centum in excess of the discount rate on
> ninety-day commercial paper in effect at the Federal
> reserve bank in the Federal reserve district where the
> bank is located, whichever may be the greater, and such
> interest may be taken in advance, reckoning the days for
> which the note, bill, or other evidence of debt has to
> run....  And the purchase, discount, or sale of a bona
> fide bill of exchange, payable at another place than the
> place of such purchase, discount, or sale, at not more
> than the current rate of exchange for sight drafts in
> addition to the interest, shall not be considered as
> taking or receiving a greater rate of interest.
>
> The taking, receiving, reserving, or charging a rate of
> interest greater than is allowed by section 85 of this
> title, when knowingly done, shall be deemed a forfeiture
> of the entire interest which the note, bill, or other
> evidence of debt carries with it, or which has been
> agreed to be paid thereon.  In case the greater rate of
> interest has been paid, the person by whom it has been
> paid, or his legal representatives, may recover back, in
> an action in the nature of an action of debt, twice the
> amount of the interest thus paid from the association
> taking or receiving the same:  *Provided*, That such action
> is commenced within two years from the time the usurious
> transaction occurred.

See, 12 U.S.C. §§ 85 and 86, respectively.  These provisions have

been held to completely preempt state law claims premised on usury.

As explained by the United States Supreme Court:

> In addition to this Court's longstanding and consistent
> construction of the National Bank Act as providing an
> exclusive federal cause of action for usury against
> national banks, this Court has also recognized the
> special nature of federally chartered banks.  Uniform
> rules limiting the liability of national banks and
> prescribing exclusive remedies for their overcharges are
> an integral part of a banking system that needed
> protection from "possible unfriendly State legislation."
> Tiffany v. National Bank of Mo., 18 Wall. 409, 412
> (1874).  The same federal interest that protected

national banks from the state taxation that Chief Justice Marshall characterized as the "power to destroy," <u>McCulloch v. Maryland</u>, 4 Wheat. 316, 431, (1819), supports the established interpretation of §§ 85 and 86 that gives those provisions the requisite pre-emptive force to provide removal jurisdiction.   In actions against national banks for usury, these provisions supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law. Because §§ 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank.

<u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 10-11 (2003).

In its Motions to Remand, the State of Mississippi argues that the Payment Protection Plans at issue in the subject lawsuits cannot be considered "interest" under the NBA.   Although the term "interest" is not defined by that statute, the Supreme Court has held that courts may defer to the definition promulgated by the Office of the Comptroller of the Currency ("OCC").   <u>See</u> <u>Smiley v. Citibank (South Dakota), N.A.</u>, 517 U.S. 735 (1996)(concluding that the OCC regulation defining the term "interest" deserved deference and was reasonable).   Under this definition:

The term "interest" as used in 12 U.S.C. 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, overlimit fees, annual fees, cash advance fees, and membership fees.   It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or notarization, or fees incurred to obtain credit reports.

12 C.F.R. § 7.4001(a). Applying this definition, courts have found that many types and fees constitute "interest" under the NBA. See e.g. Smiley, 517 U.S. 735 (finding that credit card late payment fees constituted "interest" for the purpose of the NBA); Phipps v. Guaranty Nat'l Bank of Tallahassee, 2003 WL 22149646, at *6 (W.D. Mo. Sept. 13, 2007)(finding that loan origination fees and loan discount fees constitute "interest" under the NBA).

Here, Defendants have submitted Declarations showing that the Payment Protection Plans are intended to modify the contractual terms for repayment of an outstanding credit card balance.[14]  For example, the Chase Defendants have submitted a Declaration from Marc Fink ("Fink"), the Marketing Director for Chase Bank USA, N.A., who declares:

> Chase cardholders ordinarily must make minimum payments on their credit card account balance each month.  Under a payment protection plan, a cardholder's obligation to make these minimum payments is suspended or cancelled in whole or in part under the circumstances covered by the plan.  In the event of a suspension of the cardholder's repayment obligations, the cardholder need not make the minimum payment that otherwise would be due and is relieved of interest charges and late fees that otherwise

---

[14]   The State has objected to the Declarations on the grounds that the issue of federal question jurisdiction is to be decided from the face of the plaintiff's well-pleaded complaint. See Rebuttal [Docket No. 9], at 9-10.  In limited circumstances, however, courts may permissibly look at documents outside the complaint that "clarify that a plaintiff's state law claim is one that would be preempted by federal law." Eggert v. Britton, 223 F. App'x 394, 397 (5th Cir. 2007).  Here, the Court finds the Declarations do no more than clarify Defendants' bases and rationales for arguing that the MCPA claims in the Amended Complaints are preempted.  Accordingly, the Court finds it can permissibly consider the Declarations to determine whether federal question jurisdiction exists over the subject lawsuits.

would accrue during the suspension period, as specified by the terms of the plan. In the event of a cancellation, the cardholder is also relieved of the obligation to repay some or all of the principal amount of the loan balance. Depending on the plan, debt cancellation or suspension may occur in the event of death, disability, involuntary unemployment, marriage, birth of a child, change-of-residence, natural disaster, call to military service, hospitalization, business hardship, a once-a-year payment holiday, and other qualifying events, each of which is specifically defined by the terms of the plan.

Chase's payment protection plans extend additional credit to cardholders in some or all of the following ways: (i) they relive customers of minimum payment obligations, thus extending the term of the loan and allowing customers to retain loaned funds for a longer period of time before repaying them, (ii) they allow customers to retain loaned funds on more favorable terms (i.e. without paying interest charges that would accrue in the absence of the plan, and without paying late fees that otherwise would accrue if the customer were to fail to make a minimum payment, (iii) they relieve customers from the prospect of breaching or defaulting on their credit card loan terms, (iv) they allow customers to continue drawing on the credit extended by their credit card account under circumstances in which it otherwise might be reduced or withdrawn (i.e., customers may continue to use their credit card up to their credit limit while benefitting from debt cancellation or suspension), and (v) the plans may permanently relieve customers of some or all of their loan balances.

See Chase Action, Resp. [Docket No. 30], Ex. 3 (Fink Dec.) at ¶¶ 4-5. See also id. at Ex. 1 (Jill J. Dowd Dec.) at ¶¶ 5-6 (providing similar information with respect to Payment Protection Plans in HSBC Action); Id. at Ex. 2 (William Ellis Dec.) at ¶¶ 6-7 (providing similar information with respect to Payment Protection Plans in BOA Action); Id. at Ex. 4 (Macdara Hoade Dec.) at ¶ 4 (providing similar information with respect Payment Protection Plans in Citibank Action); Id. at Ex. 5 (Mona Jantzi Dec.) at ¶¶ 4-5 (providing similar information with respect to Payment Protection

Plans in Capitol One Action); Id. at Ex. 6 (Nancy M. O'Keefe Dec.) at ¶¶ 4-7 (providing similar information with respect to Payment Protection Plans in Discover Action).

Having considered the pleadings, the Court finds the fees paid for the Payment Protection Plans underlying the MCPA claims in the subject lawsuits would constitute interest as that term is defined by the OCC. Again, the term "interest" is defined to include any payment that compensates a creditor for an extension of credit. Here, the underlying extensions of credit were presumably made pursuant to contractual agreements entered between Defendants and the individual credit card holders. Under the Payment Protection Plans, the credit card holders have a contractual right to have the terms under which they are required to repay the extended credit modified.[15] Likewise, under the Plans, Defendants are obligated to

---

[15] The OCC define a debt cancellation contract as:

> [A] loan term or contractual arrangement modifying loan terms under which a bank agrees to cancel all or part of a customer's obligation to repay an extension of credit from that bank upon the occurrence of a specified event. The agreement may be separate from or a part of other loan documents.

And define a debt suspension agreement as:

> [A] loan term or contractual arrangement modifying loan terms under which a bank agrees to suspend all or part of a customer's obligation to repay an extension of credit from that bank upon the occurrence of a specified event. The agreement may be separate from or a part of other loan documents. The term debt suspension agreement does not include loan payment deferral arrangements in which the triggering event is the borrower's unilateral election to defer repayment, or the bank's unilateral decision to allow a deferral of repayment.

modify the terms of the contractual agreements under which credit is extended, i.e. by reducing or eliminating minimum payment requirements, by eliminating interest charges, and/or by eliminating some or all of an existing credit balance, in the event of a specified occurrence. Because the fees paid for the Payment Protection Plans compensate Defendants for their having to modify the terms under which credit is extended, the Court finds the payments are for extensions of credit and, therefore, constitute interest as that term is defined by the OCC regulations. See Hawaii ex rel Louie v. JP Morgan Chase & Co., 907 F.Supp.2d 1188, 1211 (D. Haw. 2012)(finding that charges imposed by creditors for participation in payment protection plans constituted interest under the NBA). In so doing, this Court disagrees with the decision reached by the court in West Virginia ex rel McGraw v. JPMorgan Chase & Co., 842 F.Supp.2d 984 (S.D. W. Va. 2012), a decision upon which the State relies heavily. In McGraw, the court found that payment protection plans could not be considered interest under the NBA because (1) participation in the plans was not a prerequisite for obtaining or continuing to qualify for an extension of credit, (2) the plans only provided "very limited modifications of the underlying credit terms", and (3) the fees are paid to cover the cost a particular service as opposed to an extension of credit. Id. at 991-92. This Court, however, is not aware of any authority that supports the finding that a creditor

---

12 C.F.R. § 37.2(f) and (g), respectively.

must assess the same fees or the same rate against each customer in
order for those fees/rates to constitute "interest" under the NBA.
Likewise, the Court is not aware of any authority that establishes
a correlation between the definition of the term "interest" and the
manner and/or degree a fee impacts the terms under which credit is
extended.  Finally, as explained above, the Court finds the fees
paid for the Payment Protection Plans do compensate the creditors
for an extension of credit because the Plans require the creditors
to modify the terms under which they will be repaid.

Having found the fees for Payment Protection Plans constitute
interest under the NBA, the Court next considers the argument by
the State that complete preemption does not exist because it has
not alleged that the rate of the fees is usurious.  A reading of
the Amended Complaints, however, shows that the State does
challenge the amounts being paid by Mississippi credit card holders
for the Payment Protection Plans.  See e.g. Am. Compl. at ¶ 22
(alleging that Defendants have charged substantial sums of money
for enrollment in Payment Protection Plans; id. at ¶ 45 (alleging
that Defendants purposefully designate their Payment Protection
Plans in a manner that allows them to avoid state regulation and
charge higher fees); id. ¶¶ 45-46 (alleging that Payment Protection
Plans are unregulated as to terms, conditions, and fees thereby
making them highly profitable for Defendants while offering little
or no benefit to consumers).  The court in Louie, 907 F.Supp.2d at
1212, found that similar allegations, i.e. that "the costs
Defendants assessed for their [Payment Protection Plans] exceeded

42

the value conferred upon ... consumers through the product" and that "consumers have been injured as a result", "necessarily constitute[d] challenges to the rate of interest." Another court found that the plaintiff's allegations that the creditor defendant had impermissibly combined unwarranted fees with unpaid principal, and then imposed interest on the whole, had challenged the rate at which the interest was being charged and, therefore, had stated a claim under the NBA. See Nelson v. Citibank (South Dakota) N.A., 794 F.Supp. 312 (D. Minn. 1992).

Based on its reading of the Amended Complaints, the Court finds that the State has challenged the rate of the fees being charged for Payment Protection Plans, and has impliedly alleged that those fees are excessive in light of the benefits being derived by the credit card holders who have been enrolled in such plans. Accordingly, the Court finds it may properly exercise federal question jurisdiction, on the basis of complete preemption under the NBA, in the Chase Action, HSBC Action, Citigroup Action, BOA Action, and Capital One Action.

**E.  Complete Preemption Under the DIDA**

In the Notice by which the Discover Action was removed, Defendants claim complete preemption under the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"), codified at 12 U.S.C. § 1831d.[16]  Under DIDA:

---

[16] The NBA does not apply in the Discover Action because that lawsuit was brought against a state-chartered bank.

In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks, or insured branches of foreign banks with respect to interest rates, if the applicable rate prescribed in this subsection exceeds the rate such State bank or insured branch of a foreign bank would be permitted to charge in the absence of this subsection, such State bank or such insured branch of a foreign bank may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank or such insured branch of a foreign bank is located or at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.

If the rate prescribed in subsection (a) of this section exceeds the rate such State bank or such insured branch of a foreign bank would be permitted to charge in the absence of this section, and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section, the taking, receiving, reserving, or charging a greater rate of interest than is allowed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from such State bank or such insured branch of a foreign bank taking, receiving, reserving, or charging such interest.

12 U.S.C. § 1831d(a) and (b), respectively. Several courts that have examined the DIDA have found that it completely preempts state usury law claim alleged against state chartered banks. See e.g. In re Commt'y Bank of. N. Va., 418 F.3d 277, 295 (3d Cir. 2005)(finding that DIDA "completely preempts any state law attempting to limit the amount of interest and fees a federally

insured-state chartered bank can charge."). <u>See</u> <u>also</u> <u>Discover Bank</u> <u>v. Vaden</u>, 489 F.3d 594, 606 (4th Cir. 2007), <u>rev'd on other grounds</u> 556 U.S. 49 (2009)(finding, based on (1) the express preemption language of the DIDA; (2) the statute's legislative history affirming Congress' intent to provide competitive equality between national and state-chartered banks, (3) the virtual identity of the preemption language in the NBA and that of the DIDA, and (4) the Supreme Court's finding of complete preemption under the NBA, that it would be "hard-pressed to conclude other than that Congress intended complete preemption of state-court usury claims under the [DIDA]."). This Court joins in these decisions.

For the reasons discussed above regarding the findings that the Payment Protection Plan fees constitute interest and that the State has challenged the excessive rate at which the fees are allegedly being charged, the Court finds that these claims in the <u>Discover</u> Action would be preempted under the DIDA for the same reasons they are preempted under the NBA.

## IV. Conclusion

In summation, the Court finds it may properly exercise diversity jurisdiction in each of the subject lawsuits in this consolidated action under the mass action provision of the CAFA. The Court additionally finds it may exercise federal question jurisdiction in the <u>Chase</u> Action, <u>HSBC</u> Action, <u>Citigroup</u> Action, <u>BOA</u> Action, and <u>Capital One</u> Action because some of state claims alleged in those cases are preempted under the NBA, and it may

45

exercise federal question jurisdiction in the <u>Discover</u> Action because some of state claims alleged in that case are preempted under the DIDA. Finally, with respect to any claim(s) the Court cannot exercise federal subject matter jurisdiction, it may exercise supplemental jurisdiction under 28 U.S.C. § 1367. As the Court finds it may exercise subject matter jurisdiction in each of the subject lawsuits, the Motions filed by the State of Mississippi to Remand shall be denied.

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Clerk of Court is hereby directed to file a copy of this Opinion and Order in each of the civil actions in this consolidated case.

IT IS FURTHER ORDERED that the Motion of Plaintiff to Remand in the <u>Chase</u> Action, Civil Action No. 3:12-cv-565 [Docket No. 11] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Plaintiff to Remand in the <u>HSBC</u> Action, Civil Action No. 3:12-cv-571 [Docket No. 11] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Plaintiff to Remand in the <u>Citigroup</u> Action, Civil Action No. 3:12-cv-572 [Docket No. 9] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Plaintiff to Remand in the <u>Discover</u> Action, Civil Action No. 3:12-cv-573 [Docket No. 11] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Plaintiff to Remand in the <u>BOA</u> Action, Civil Action No. 3:12-cv-574 [Docket No. 9] is

hereby denied.

IT IS FURTHER ORDERED that the Motion of Plaintiff to Remand in the <u>Capital One</u> Action, Civil Action No. 3:12-cv-575 [Docket No. 8] is hereby denied.

IT IS FURTHER ORDERED that the remand-related stay in this case is hereby vacated.

IT IS FURTHER ORDERED that the Orders by which these civil actions were consolidated [Docket Nos. 19 and 20], shall remain in effect until further order of the Court. Consolidation is being maintained to (1) effectuate a consolidated appeal in the event any of the parties seeks such review under 28 U.S.C. § 1292 and/or 28 U.S.C. § 1453, and (2) permit the parties and magistrate judge the opportunity to discuss whether the cases should remain consolidated through, at least, the discovery phase of litigation.

SO ORDERED this the 31st day of July, 2013.


                              s/ William H. Barbour, Jr.
                              UNITED STATES DISTRICT JUDGE